IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSAN WEBB, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-03111-L |
| | § | |
| HMSHOST, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Doc. 8) ("Motion"), filed March 24, 2025. After considering the Motion, response, reply, pleadings, and applicable law, and for the reasons set forth herein, the court **grants** the Motion and also **grants** Plaintiff leave to replead, but only with respect to those claims not dismissed with prejudice as time-barred. Specifically, Plaintiff will be permitted leave to replead her Title VII, ADEA, and ADA claims but only insofar as these claims arise from discriminatory or retaliatory actions that are alleged to have occurred on or after December 18, 2021, and to replead her race discrimination claim under Section 1981, but only insofar as this claim arises from discriminatory or retaliatory actions that are alleged to have occurred in or after August 2022.

### I.    Factual Background and Procedural History

This is an employment discrimination case. Plaintiff Susan Webb ("Plaintiff" or "Ms. Webb") is a former employee of HMSHost, Inc. ("Host" or "Defendant"), a global restaurateur operating in airports across the country. Compl. ¶ 8 (Doc. 1).[1] Ms. Webb is a Latina woman, who

---

[1] The court's recitation of the facts is taken from the Complaint (Doc. 1). At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

**Memorandum Opinion and Order - Page 1**

is over the age of 40, and identifies as a person with a disability (lupus) and as a member of the Church of Jesus Christ of Latter-Day Saints. *Id.* ¶ 7. She worked for Host in Chicago, Illinois, for approximately twenty-five years and, in August 2019, she sought a relocation transfer to the Dallas-Fort Worth Metroplex. *Id.* ¶ 10. Host approved Ms. Webb's request and transferred her to Cowboy's Club, a sports-themed dining venue at Dallas-Fort Worth International Airport. *Id.* Plaintiff alleges that, after her transfer, she was subjected to discrimination during her employment because of her race, age, religion, and disability. *Id.* ¶¶ 12-23. She further alleges that her complaints regarding this discrimination were ignored and resulted in harassment and retaliation against her. *Id.* This alleged discrimination "ultimately resulted in her being terminated or constructively discharged." *Id.* ¶ 24.

Plaintiff alleges that "after transfer to DFW, her base wage was reduced from $10.45 per hour plus tips, to $2.13 per hour plus tips, in a similar role and environment. She was not informed of a reduction in wages prior to her transfer. She found out about the change only when she received her paycheck." *Id.* ¶ 12. Plaintiff informed "Host's Manager Lisa Nelson, thinking at the time there had been an error. She was told that this is what they paid in Texas and that she 'should have done her research.'" *Id.* ¶ 13. Plaintiff alleges "she was paid substantially less than her peers who did not belong to protected classes, even those with less experience." *Id.* ¶ 14.

Plaintiff further alleges that she "began to suspect race and national origin discrimination relating to the bar seating and service." *Id.* ¶ 17. She asserts that:

> [she] observed that White/Caucasian customers were directed to the bar area. When a customer who was not white approached the bar to sit in an open seat, he or she would routinely be told that the area needed to be cleaned and to take a table outside of the bar area. Most often, she noticed it was Black/African-American customers who were steered away from the bar area and told to sit on the dining floor, but she also saw the same practice applied to other minority groups. Ms. Webb also observed that most of the servers assigned to work in the bar area were White/Caucasian, while those serving the floor area were more diverse. She

**Memorandum Opinion and Order - Page 2**

requested to move to the bar area so that she could increase the availability of her tips. She has, and at all times had, a current TABC certification. Despite her experience and certification, her requests to transfer were denied. On multiple occasions, she was passed over for an open bartending position, which was instead granted to an individual who did not belong to a protected class she belonged to.

*Id.*

According to Plaintiff, she "continued to work as a server. Despite her excellent performance, she became the victim of discriminatory conduct." *Id.* ¶ 18. Among other things, she alleges that even when Hispanic/Latino customers were seated in other sections, she would be told to work those tables, with one manager even telling her, "take care of your people." *Id.* She also overheard another employee talk about her and specifically state, "some people need to just stay at home with the grandkids." *Id.* She received comments from managers on her appearance and dress code that had no application to male employees and were not uniformly applied based on race. *Id.* Other employees, including supervisors, made comments and jokes about her heritage. *Id.*

Ms. Webb further alleges that she was "asked to do menial tasks such as rolling silverware and running food for other tables and chastised when she failed to do it[,] [and] was the first one cut nearly every shift." *Id.* ¶ 19. She alleges that the one Latina supervisor she had was promptly replaced by a White/Caucasian male. *Id.* She attempted to address this conduct but was told by her manager she should just accept the way things were and that, "things were different down here." *Id.*

Plaintiff "escalated her concerns regarding discrimination to . . . Human Resources [and] was told an 'investigation' would be performed. She was never informed of the outcome of the investigation and never heard of any statements being taken or work being done." *Id.* ¶ 20.

Following her expression of her concerns, the harassment escalated. *Id.* ¶ 21. Among other things, she alleges that:

employees created a group text, which included messages specifically harassing her. She was frequently bullied, mocked, called names, and experienced a reduction in the frequency and duration of her shifts. Her drink tickets would go unfulfilled by those working in the bar, making it difficult for her to perform her job duties. Her work hours were reduced to part-time. Her stress was so bad that her hair began to fall out. She asked for a transfer to another locations. However, despite her long-standing practice of foregoing work on Sunday to observe her religious sabbath day, she was only offered transfers that would require work on Sunday, which she believes was intentional and retaliatory, but alleges in the alternative, constituted discrimination based on religion.

*Id.*

Although she does not state when in time each the foregoing events allegedly occurred, Ms. Webb does assert that on August 9, 2022, she had an encounter with a coworker who was smoking a vape pen in the back of the restaurant. *Id.* ¶ 22. She alleges that the coworker "began yelling at her and raised the hand holding the vape pen as if the coworker was about to strike her. The manager did nothing." *Id.* "As a result of this stressful situation, [she] experienced a debilitating Lupus flare, which included breaking out in hives over her whole body." *Id.* She alleges she informed Host of this event. *Id.*

Ms. Webb alleges she "provided notice of her medical conditions and expected to engage in the interactive process regarding disability accommodations and return to work." *Id.* ¶ 23. "However, she did not receive an adequate response or any meaningful attempt to engage in the interactive process." *Id.* Plaintiff "filed an EEOC charge alleging she was subjected to employment discrimination that ultimately resulted in her being terminated or constructively terminated." *Id.* ¶ 24.

On October 14, 2022, Ms. Webb filed a complaint of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce

**Memorandum Opinion and Order - Page 4**

Commission ("TWC"). *Id.* ¶ 25; Def.'s Mot., Ex. 1 (Charge of Discrimination at 2-6) (Doc. 8-1).[2]

On September 16, 2024, the EEOC issued her a "Right to Sue Letter." Compl. ¶ 26.

On December 12, 2024, Plaintiff her Complaint alleging: (1) discrimination and retaliation on the basis of race and religion under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) discrimination and retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); (3) violations of Chapter 21 of the Texas Labor Code ("TCHRA");[3] (4) disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; and (5) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).[4]

Host moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion has been fully briefed and is ripe for disposition.[5]

---

[2] The court will consider the Charge of Discrimination attached to Defendant's Motion. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim.") (citation omitted) (internal quotation marks omitted) (brackets in original).

[3] As recently noted by the Fifth Circuit, "The Texas Commission on Human Rights (TCHR) has been replaced with the Texas Workforce Commission (TWC), Tex. Lab. Code § 21.0015, but courts still regularly refer to Chapter 21 of the Texas Labor Code as the TCHRA. We will follow suit." *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 685 (5th Cir. 2024) (internal citation omitted).

[4] In the Complaint, Plaintiff divides her claims into nine separate "causes of action." *See* Compl. ¶¶ 28-86. In the interest of clarity and efficiency, the court has consolidated her nine causes of action into five separate categories of claims: (1) discrimination and retaliation on the basis of race and religion under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"); (2) discrimination and retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); (3) violations of Chapter 21 of the Texas Labor Code ("TCHRA"); (4) disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; and (5) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). Further, although Plaintiff captions her "Sixth Cause of Action" as "Retaliation in Violation of the Americans with Disabilities Act," her allegations make clear she is alleging age discrimination. *See* Compl. ¶¶ 67-72.

[5] The court notes that Ms. Webb makes additional factual allegations for the first time in her response to Defendant's Motion, including that the "group [text] chat" mentioned in her Complaint included supervisors. *See* Pl.'s Resp. 5. Factual allegations presented for the first time in response to a motion, however, are generally not properly before the court. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021) (Hendrix, J.).

**Memorandum Opinion and Order - Page 5**

## II.    Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.

---

The court will, therefore, limit its consideration to the facts alleged in the Complaint and will not consider allegations first raised in Plaintiff's response brief.

1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way:

> A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits. So when reviewing such a motion, we assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff. The complaint survives if it contains sufficient factual matter . . . to state a claim to relief that is plausible on its face.

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citations and quotation marks omitted). Accordingly, the denial of a 12(b)(6) motion has no bearing as to whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.

### III.   Analysis

Host moves to dismiss the majority of Ms. Webb's claims as time-barred. Specifically, Host contends that Ms. Webb's Section 1981 and TCHRA claims are time-barred. *See* Def.'s Mot. 12-14.[6] Host also argues that her Title VII, ADA, and ADEA claims—insofar as they are based on events that are not alleged to have occurred on or after December 18, 2021—are time-barred. *See id.* at 14-16. Host further contends that all claims should be dismissed under Rule 12(b)(6). *Id.* at 19-32. The court first addresses the timeliness of Plaintiff's claims.

#### A. Timeliness of Plaintiff's Claims

##### 1.  Section 1981 Claims

Host contends that Plaintiff's Section 1981 claims are time-barred and, therefore, must be dismissed. *See* Def.'s Mot. 12-13. In support, Host maintains that Plaintiff's Section 1981 is subject to a two-year statute of limitations. *Id.* at 13. In response, Plaintiff asserts that her claims are governed by a four-year statute of limitations. Pl.'s Resp. 7-10. In its reply, Host does address her argument. *See* Def.'s Reply, *passim* (Doc. 15). For the reasons that follow, the court determines

---

[6] Citations to the parties' briefs refer to the CM/ECF page numbers at the top of the page, rather than the parties' pagination at the bottom.

that Plaintiff's Section 1981 discrimination and retaliation claims are subject to a four-year statute of limitations.

Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The statute defines "[m]ake and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (noting that the Civil Rights Act of 1991 defined "the key 'make and enforce contracts' language in § 1981 to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship'" (quoting § 1981(b))). To bring a § 1981 claim, a plaintiff "must allege that (1) [he or she is a] member[] of a racial minority; (2) [the] [d]efendant[] intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). "The elements of a § 1981 retaliation claim are[:] (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection [exists] between the protected activities and the adverse action." *Id.* at 390 (citing *Foley v. University of Hous. Sys.*, 355 F.3d 333, 339, 340 n.8 (5th Cir. 2003)).

"Because § 1981 lacks an express statute of limitations, courts adopt the most closely analogous state-law limitations period," and "where a section 1981 claim is brought in Texas, the two[-]year statute of limitations for personal injury actions in Texas controls." *Teamah v. Applied Materials, Inc.*, 715 F. App'x 343, 346 (5th Cir. 2017) (per curiam) (quoting *Jones v. ALCOA,*

**Memorandum Opinion and Order - Page 9**

*Inc.*, 339 F.3d 359, 364 (5th Cir. 2003)). "If the plaintiff's claim against the defendant was made possible by the 1991 revisions to the statute, then a four-year statute of limitations applies." *Id.* at 346 n.13 (citation and internal quotation marks omitted); *see also R.R. Donnelley & Sons Co.*, 541 U.S. at 382. "The 1991 revisions allow a plaintiff to sue for conduct, such as harassment or termination, that occurs after contract formation." *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005).

"Thus, where a plaintiff brings a § 1981 claim for 'hostile work environment, wrongful termination, and failure to transfer,' those claims arise under the 1991 amendment to § 1981, and the four-year statute of limitations under 28 U.S.C. § 1658 applies." *Hendrix v. iQor Inc.*, 2021 WL 3040776, at *3 (N.D. Tex. June 7, 2021) (citing *R.R. Donnelley & Sons Co.*, 541 U.S. at 382-83) (Rutherford, J.), *accepted by*, 2021 WL 3036949 (N.D. Tex. July 19, 2021) (Godbey, J.).

Ms. Webb filed her Complaint on December 12, 2024. Although the Complaint does not identify the dates on which many alleged discriminatory actions and adverse employment actions occurred, her Charge of Discrimination filed with the EEOC states that the last discriminatory act allegedly occurred on September 5, 2022. *See* Doc. 15-1 at 1. Also, she alleges other discriminatory actions in August of 2022, which she attributed to a hostile work environment.  In her response brief, she "requests Defendant's motion be denied with regard to her wrongful termination and hostile work environment claims." Pl.'s Resp. 10.

Causes of action to which § 1658 applies "may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). Further, "the limitations period for section 1981 . . . employment discrimination cases commences when the plaintiff knows or reasonably should know that the [challenged] discriminatory act has occurred." *ALCOA, Inc.*, 339 F.3d at 364

(citation omitted) (internal quotation marks omitted); *see also Pena v. Texas Med. Bd.*, 675 F. App'x 465, 467 (5th Cir. 2017) (per curiam).

Though Ms. Webb alleges discriminatory conduct during her employment without providing many dates, the court determines, based upon her allegations, that her hostile work environment claim accrued in August 2022 and her discrimination and retaliation claims related to her termination and/or constructive discharge accrued on September 4, 2022. She filed her Complaint on December 12, 2024. Accordingly, her Section 1981 hostile work environment claim arising from the events of August 2022 and discrimination and retaliation claims related to her termination and/or constructive discharge are not time-barred. Any Section 1981 claims for race discrimination, hostile work environment, or termination arising from alleged discriminatory acts prior to August 2022, which is the only date she pleads in the Complaint other than her 2019 transfer, are time-barred and dismissed with prejudice.

### 2. *TCHRA Claims*

Host contends that Ms. Webb's TCHRA claims must be dismissed as time-barred. Def.'s Mot 13-14. The court agrees.

Section 21.256 of the Texas Labor Code provides "[a] civil action may not be brought under this subchapter later than the second anniversary of the date the complaint relating to the action is filed." Tex. Lab. Code § 21.256; *see also Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000) ("Whether she receives a letter [notifying her of her right to file a civil action under the TCHRA] or not, the complainant must institute her state suit within two years of filing the administrative complaint." (citing Tex. Lab. Code § 21.256)). The Texas Commission on Human Rights (TCHR) and the EEOC have entered into a "Worksharing Agreement," in which each has "designate[d] the other as its agent for the purpose of receiving and drafting charges, including

**Memorandum Opinion and Order - Page 11**

those that are not jurisdictional with the agency that initially receives the charges." *Vielma*, 218 F.3d at 462 (citation omitted). Thus, "when a complainant files her initial charge with the EEOC, her charge will also be considered filed with the TCHR." *Id.* at 462-63 (citing *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994); *Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 773 (Tex. App.—Houston [14th Dist.] 1996, no writ)); *see also Fort Bend Cnty. v. Davis*, 587 U.S. 541, 544 (2019) ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other." (citing 29 CFR § 1601.13)); *Williamson v. Pay & Save, Inc.*, 205 F. Supp. 3d 863, 867-68 (W.D. Tex. 2015) ("Accordingly, 'when a complainant files her initial charge with the EEOC, her charge will also be considered filed with the TCHR.'" (quoting *Vielma*, 218 F.3d at 462-63)).

Here, Ms. Webb asserts claims for discrimination and retaliation under the TCHRA. Compl. ¶¶ 25-27; 83-86. There is no dispute that she filed this civil action on December 12, 2024, more than two years after filing her charge regarding these claims on October 14, 2022.

Although Ms. Webb acknowledges the two-year statute of limitations in her response, she asserts that her delay is justified because she misread or was misled by the EEOC's right-to-sue letter and, therefore, the court should allow her claims under an equitable-tolling theory. *See* Pl.'s Resp. 13-14. "Equitable tolling applies principally where the plaintiff is *actively* misled by the defendant about the cause of action or is prevented in some other extraordinary way from asserting his rights." *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996) (emphasis added). It "is a narrow exception" and "should be 'applied sparingly.'" *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (quoting *Ramirez v. City of San Antonio*, 312 F.3d 178,

**Memorandum Opinion and Order - Page 12**

183 (5th Cir. 2002)). "The plaintiff has the burden to provide justification for equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citation omitted).

Here, Ms. Webb simply has not met her burden of showing that she is entitled to equitable tolling, as her entire argument is based on a misreading of the EEOC's right-to-sue letter. Further, she provides no case law justifying her delay based on her interpretation of the right-to-sue letter.

For the reasons set forth above, the court **grants** Defendant's Motion and dismisses with prejudice as time-barred Plaintiff's TCHRA claims.

### 3. Title VII, ADA, and ADEA Claims Based on Events that are not Alleged to have Occurred on or after December 18, 2021

Host contends that Ms. Webb's Title VII, ADA, and ADEA claims are time-barred to the extent they are based on events that are not alleged to have occurred on or after December 18, 2021. *See* Def.'s Mot. 14-16. According to Host, "Plaintiff filed her Charge on October 14, 2022. Therefore, any allegedly discriminatory or retaliatory actions which form the basis of Plaintiff's Title VII, ADA, or ADEA claims, and which are not alleged to have occurred on or after December 18, 2021 (i.e., more than 300 days prior to October 14, 2022) are time-barred." *Id.* at 14 (internal citation omitted).

Under Title VII, plaintiffs must exhaust their administrative remedies by filing a discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). The same is true for ADA claims, *see id.* § 12117(a), and ADEA claims. *See Tyler v. Union Oil Co.*, 304 F.3d 379, 384 (5th Cir. 2002).

In her response, Plaintiff recognizes that the limitations period for filing a charge with EEOC is 300 days after the alleged unlawful employment practice occurred. *See* Pl.'s Resp. 7. She contends, however, that she "has clearly met this requirement as her Title VII, ADA, and ADEA

claims stem from her termination or constructive termination in September of 2022, and her charge was filed October 14, 2022." *See id.*

Host does not dispute, and the court agrees, that Plaintiff's claims stemming from her termination or constructive discharge in September of 2022 are timely. The court, however, agrees with Host that any "allegedly discriminatory or retaliatory actions which form the basis of Plaintiff's Title VII, ADA, or ADEA claims, and which are not alleged to have occurred on or after December 18, 2021 (*i.e.*, more than 300 days prior to October 14, 2022) are time-barred." Def.'s Reply 5-6.

Here, Ms. Webb's argument that the continuing violation doctrine should apply to her hostile work environment claim and claim related to alleged wage reduction in 2019 are unavailing. *See* Pl.'s Resp. 16-18. "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993) (internal quotation marks and citation omitted). "[T]he continuing violation doctrine extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Doe v. United States*, 197 F. Supp. 3d 933, 939 (S.D. Tex. 2016), *aff'd*, 853 F.3d 792 (5th Cir. 2017), *as revised* (Apr. 12, 2017). In contrast, "[d]iscrete actions, even if 'serial,' 'are not entitled to the shelter of the continuing violation doctrine.'" *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)). Examples of discrete acts include termination, failure to promote, denial of transfer, or refusal to hire. *Morgan*, 536 U.S. at 114. To take advantage of the doctrine, a plaintiff must show "some of the 'continuous conduct' occurred within the limitations period," meaning that "(1) there are separate-butrelated

**Memorandum Opinion and Order - Page 14**

[sic] acts at issue; and (2) the violation [wa]s continuing" into the limitations period. *Hearn v. McCraw*, 856 F. Appx. 493, 496 (5th Cir. 2021) (citing *Heath v. Board of Supervisors for S. Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 738-40 (5th Cir. 2017)).

First, Plaintiff's alleged wage reduction upon her transfer in 2019 to Cowboy's Club is a discrete act that cannot qualify as a continuing violation.[7] With respect to her hostile work environment claim, as Host correctly notes in its reply, it is "undisputed that Plaintiff does not allege in her Complaint that any of the complained-of actions continued to occur after December 18, 2021 – in other words, she has failed to 'show a series of related acts, one or more of which falls within the limitations period' as required for the doctrine to apply." Def.'s Reply 15 (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272 (5th Cir. 2004)). Further, the alleged incidents of harassment alleged in the Complaint do not involve the same type of discrimination but include multiple allegedly discriminatory reasons, such as race, age, national origin, sex, and retaliation. In addition, Plaintiff alleges actions which have no connection to protected characteristics. Finally, Plaintiff's claims are so conclusory in nature and lacking temporal framework that the court is unable to discern the frequency of the alleged acts. For these reasons, Ms. Webb's attempt to invoke the continuing violation doctrine is unavailing.

---

[7] While Ms. Webb does not dispute that her alleged wage reduction in 2019 was a discrete act that fell outside the statute of limitations and is not subject to the continuing violation doctrine, she asserts that her claim should survive dismissal because "the inference that she learned of the discrimination later in her employment is reasonable." Pl.'s Resp. 19-20. The court is not persuaded. As already noted, *see supra* note 5, factual allegations presented for the first time in response to a motion are generally not properly before the court. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021) (Hendrix, J.). Further, the court does not strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

**Memorandum Opinion and Order - Page 15**

In summary, for the reasons set forth above, the court **grants** Defendant's Motion and dismisses with prejudice as time-barred Plaintiff's Title VII, ADA, and ADEA claims to the extent they are based on events that are not alleged to have occurred on or after December 18, 2021.

### B.  Failure to State a Claim

The court now addresses whether the timely actions alleged in the Complaint state claims under Title VII, Section 1981, the ADA, or the ADEA. As discussed above, any allegedly discriminatory or retaliatory actions that form the basis of Plaintiff's Title VII, ADEA, or ADA claims, and that are not alleged to have occurred on or after December 18, 2021 (that is, more than 300 days prior to October 14, 2022) are time-barred and dismissed with prejudice. Further, any allegedly discriminatory or retaliatory actions that form the basis of Plaintiff's Section 1981 claims for race discrimination, and that are not alleged to have occurred in or after August 2022, are time-barred and dismissed with prejudice.

Host contends that Ms. Webb fails to state a claim, and she contends her pleadings are sufficient or, in the alternative, she should be permitted leave to amend her pleadings. Problematically, Plaintiff spends the overwhelming majority of her response brief contending her claims are timely but makes little effort responding to Host's arguments to support its contention that her pleadings are insufficient to state a plausible claim.[8]

### 1.  *Title VII and Section 1981 Claims of Race Discrimination*

Title VII makes it unlawful for employers to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] . . . sex." 42 U.S.C. § 2000e-2(a)(1). To state a prima facie case of race discrimination under Title VII, Plaintiff must set forth sufficient facts to plead "(1) is a member of

---

[8] Because the court has concluded that Ms. Webb's TCHRA claim is time-barred, the court will not consider any allegations with respect to this claim.

**Memorandum Opinion and Order - Page 16**

a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (citations omitted). To survive a motion to dismiss, however, Plaintiff needs only to plead "the ultimate elements" of her claim. *Cicalese v. University of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quoting *Chhim v. University of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). For a disparate treatment theory of race discrimination, the two ultimate elements are (1) an adverse employment action (2) taken against Webb because of her race. *See id.* "Although [Plaintiff] [does] not have to submit evidence to establish a prima facie case of discrimination at this stage, [s]he ha[s] to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make h[er] case plausible." *Chhim*, 836 F.3d at 470.

To plead a Section 1981 claim, a plaintiff must allege sufficient facts to show that (1) she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). "Although 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Id.* (internal quotations omitted). With respect to her Section 1981 claim, Ms. Webb has the burden of pleading facts that, taken as true, permit the court to infer "that race was a but-for cause of [her] injury." *Comcast Corp. v. National Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

Ms. Webb alleges she was subjected to disparate treatment based on race because she is Latina. Compl. ¶ 31. She generally alleges she "was subjected to racial discrimination, including

**Memorandum Opinion and Order - Page 17**

direct discrimination when she was paid lower wages, given fewer hours, given fewer opportunities for tips, and ultimately terminated for pretextual reasons, if any." *Id.* ¶ 33. Host contends that Ms. Webb's allegations are insufficient, and her race discrimination claims must be dismissed. *See* Def.'s Mot. 19-22. For the reasons that follow, the court agrees.

Here, even viewing these and other allegations pertaining to alleged racial discrimination as true, and drawing all reasonable inferences in her favor, Plaintiff fails to plead facts to support her Title VII and Section 1981 claims of race discrimination because she does not allege sufficient facts for the court to draw a reasonable inference that any actions were taken because she is Latina. Further, she provides no factual allegations to establish that her alleged peers were similarly situated to her in any way or factual allegations related to her alleged denial of training and leave. She does not even allege when she separated from her employment and on what grounds, fails to identify a decision-maker, fails to allege (beyond conclusory allegations) that her employment was terminated because of her race, and fails to identify any non-Latino workers who were not separated for similar reasons. *See, e.g.*, *Scroggins v. Airgas USA, LLC*, 2024 WL 2853296, at *3 (N.D. Tex. Feb. 21, 2024) (Toliver, J.), *accepted by*, 2024 WL 2853952 (N.D. Tex. June 5, 2024) (Lindsay, J.) (dismissing race discrimination claims when plaintiff failed to adequately allege that similarly situated individuals not in plaintiff's protected class were treated more favorably and where plaintiff failed to allege that the complained-of action was taken because of animus toward a protected class); *Jenkins v. City of Dallas*, 2022 WL 6225559, at *8 (N.D. Tex. Oct. 6, 2022) (Boyle, J.) (dismissing race and sex discrimination claim when the plaintiff failed to plead sufficient facts that he was treated less favorably because of his race or gender).

In addition, the court agrees with Host that "Plaintiff's claim that she was terminated because of her race is conclusory." Def.'s Mot. 22. Plaintiff fails to allege when she was terminated

**Memorandum Opinion and Order - Page 18**

or on what grounds, fails to identify a decision-maker, fails to point to any evidence that her employment was terminated because of her race, and fails to identify any non-Latino similarly situated workers that were not terminated for similar reasons. Instead, she alleges in conclusory fashion that she believes she was terminated "for pretextual reasons," and she does not provide any facts to support an alleged causal connection between her race and her alleged termination. As a result, Plaintiff's Title VII discriminatory discharge claim lacks facial plausibility and must be dismissed.

As previously explained, with respect to her Section 1981 claim, Ms. Webb also has the burden of pleading facts that, taken as true, permit the court to infer "that race was a but-for cause of [her] injury." *Comcast Corp.*, 589 U.S. at 333. Plaintiff has not done so. While she alleges that certain comments were made concerning Latinos, she does not allege facts creating the inference that she was terminated (or constructively discharged) because of his race. In her Complaint, she alleges facts suggesting she was discharged because of Host's failure to accommodate her alleged disability. Under these circumstances, Plaintiff's allegations do not contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face under the but-for causation standard." *Id.* at 341 (citation omitted) (internal quotation marks omitted).

For these reasons, to the extent not time-barred, *see supra*, the court **grants** Defendant's Motion with respect to Plaintiff's race discrimination claims under Title VII and Section 1981. Unlike her time-barred claims, *supra*, the court dismisses these claims without prejudice.

### 2. *Title VII and Section 1981 Claims of Retaliation*

Plaintiff generally alleges that Host "retaliated against [her] by punishing her for speaking up against racism" and because of "her advocacy on behalf of the Black/African-American

**Memorandum Opinion and Order - Page 19**

customers who were denied seating in the bar." Compl. ¶¶ 36, 45. Host contends that Plaintiff's allegations are insufficient and must be dismissed. *See* Def.'s Mot. 23-24. The court agrees.

To establish a prima facie case of retaliation under Title VII and Section 1981, Ms. Webb must allege facts sufficient to show that: (1) she participated in a protected activity; (2) she was discharged or suffered some adverse employment action; and (3) a causal connection exists between the protected activity and adverse employment action. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 834-35 (5th Cir. 2022).

Here, other than conclusory assertions, Plaintiff fails to plead sufficient facts to support her allegation that she engaged in protected activity. In addition, she fails to allege a causal connection between any alleged protected activity and her termination (or constructive discharge).

For these reasons, to the extent not time-barred, *see supra*, the court **grants** Defendant's Motion with respect to Ms. Webb's retaliation claims under Title VII and Section 1981. Again, unlike her time-barred claims, *supra*, the court dismisses these claims without prejudice.

### 3. *Hostile Work Environment Based on Race*

Ms. Webb alleges she was harassed and subjected to a hostile work environment based on her race. *See* Compl. ¶¶ 33, 43. From what the court can discern, Ms. Webb's hostile work environment claim is based on her allegations that she was told to serve Latino/Hispanic customers, and an unspecified manager once told her to "take care of [her] people"; that her manager made unspecified comments on her appearance and dress codes that were not uniformly applied based on race; and that unspecified coworkers "harassed" her by making "comments and jokes about her heritage," asking "whether she brought back drugs" after a trip to Colombia, creating a "group text" with unspecified "messages specifically harassing her," "bullied, mocked, [and] called [her] names," and refusing to fill her drink tickets. *See id.* ¶¶ 18-21.

**Memorandum Opinion and Order - Page 20**

To state a claim for race-based hostile work environment, Plaintiff must set forth sufficient facts to show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). Harassment based on race affects a term, condition, or privilege of employment when it is sufficiently severe or pervasive to alter the condition of the victim's employment. *See id.* Additionally, "[t]o be actionable, the alleged harassment must have created an environment that a reasonable person would find hostile or abusive." *Septimus v. University of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.*

Plaintiff does not allege any specific facts as to when and where the alleged harassment occurred, to whom she reported the harassment, or the identity of the alleged offenders. *See Mauldin v. Lockheed Martin Corp.*, 2018 WL 11470427, at *6 (N.D. Tex. Dec. 11, 2018) (O'Connor, J.) (dismissing hostile work environment claim because plaintiff did not allege when or where the harassment occurred and allegations were conclusory); *Hernandez v. Mapei Corp.*, 2018 WL 4189710, at *2 (N.D. Tex. Aug. 10, 2018) (Toliver, J.), *accepted by*, 2018 WL 4184921 (N.D. Tex. Aug. 31, 2018) (Godbey, J.) (dismissing hostile work environment claim when the plaintiff "failed to provide any details of harassment she allegedly endured, e.g., the identity of the alleged perpetrator(s), dates and places of occurrence, specific acts committed."). Ms. Webb also

**Memorandum Opinion and Order - Page 21**

does not present any facts to support the allegation that Host created an environment that a reasonable person would find hostile or abusive. *Septimus*, 399 F.3d at 611. Finally, she only offers threadbare facts and legal conclusions that she was subjected to harassment based on her race. *See Fischer v. Donahoe*, 2016 WL 1028127, at *4 (N.D. Tex. Mar. 15, 2016) (Fitzwater, J.) (dismissing hostile work environment claim when the plaintiff alleged in "conclusory terms" that she was the "victim of discriminatory harassment" "due to" her protected class.); *Maudlin*, 2018 WL 11470427, at *6 (same). In sum, Ms. Webb's pleadings are insufficient to state a hostile work environment based on race. *See Iqbal*, 556 U.S. at 678-79.

For these reasons, to the extent not time-barred, *see supra*, the court **grants** Defendant's Motion with respect to Plaintiff's hostile work environment claims based on race. Unlike her time-barred claims, *supra*, the court dismisses these claims without prejudice.

### 4. *ADA Claims*

Ms. Webb alleges disability discrimination and failure to accommodate her disability under the ADA. *See* Compl. ¶¶ 55-66. Host contends her ADA claims must be dismissed because, among other things, she does not allege facts sufficient to state a claim that she is disabled under the ADA. *See* Def.'s Mot. 26-28.

"The ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original) (quoting 42 U.S.C. § 12112(a)). To state a prima facie discrimination claim under the ADA, a plaintiff must allege facts sufficient to show: "(1) that [s]he has a disability; (2) that [s]he was qualified for the job; and (3) that [s]he was subject to an adverse employment decision on account of h[er] disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (internal

**Memorandum Opinion and Order - Page 22**

punctuation omitted) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

The ADA also "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . .'" *Delaval*, 824 F.3d at 481 (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a failure-to-accommodate claim, a plaintiff must allege facts sufficient to show: "(1) [she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana, Dep't of Just.*, 730 F.3d 450, 452 (5th Cir. 2013).

The ADA defines a disability as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

In her response brief, Ms. Webb does not address Host's argument that, beyond her conclusory allegations, she has failed to adequately allege a disability or tie any alleged impairment to a major life activity. For this reason, the court concludes she has effectively abandoned her ADA claims. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her claim when she failed to defend the claim in response to a motion to dismiss).

The court further determines that, even if Plaintiff has not abandoned this claim, she has failed to state a claim under the ADA. Other than asserting in conclusory fashion that she is

**Memorandum Opinion and Order - Page 23**

disabled because she "has Lupus, an auto-immune disease that substantially limits her major life activities as defined by the ADA . . ." (Compl. ¶ 59), she does not explain what major life activity is allegedly impacted. Further, Ms. Webb's allegations confirm she was not limited in her ability to work as a server; she just did not want to work as a server at Cowboy's Club. *See id.* ¶ 64.

For these reasons, to the extent not time-barred, *see supra*, the court **grants** Defendant's Motion with respect to Plaintiff's ADA claim. Unlike her time-barred claims, *supra*, the court dismisses this claim without prejudice.

### 5. ADEA Claims

Ms. Webb alleges both disparate impact and disparate treatment theories of age discrimination. *See* Compl. ¶¶ 67-72; 79-82. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

As a threshold matter, Ms. Webb does not dispute Host's contention that she failed to exhaust her administrative remedies as to her disparate impact claim. Accordingly, the court **grants** Defendant's Motion with respect to her disparate impact claim.

In addition, the court agrees with Host that Webb fails to plead sufficient facts to support her disparate treatment claim. To defeat dismissal of a claim for age discrimination based on disparate treatment under the ADEA, a plaintiff must set forth sufficient allegations to demonstrate that she (1) was within the protected class; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). As previously explained, although

**Memorandum Opinion and Order - Page 24**

one need not plead a prima facie age discrimination claim to survive a motion to dismiss, a plaintiff must plead "sufficient facts on all of the ultimate elements . . . to make [her] case plausible." *Chhim*, 836 F.3d at 470.

Ms. Webb does not allege that any actions occurred because of her age and instead relies on a single, isolated comment that is insufficient to establish an actionable claim. She alleges she overheard another employee talk about her and specifically state, "some people need to just stay at home with the grandkids." Compl. ¶ 18. From this isolated comment, the court is unable to reasonably infer that the employer took any adverse employment action because of Ms. Webb's age. Further, Ms. Webb does not point to any specific facts that younger workers were treated more favorably than she was treated or allege that she was replaced by someone younger. Instead, she alleges in conclusory fashion, with no factual support, that Host "continued to employ younger employees in Plaintiff Webb's position." Compl. ¶ 82. On these sparse allegations, the court determines that Plaintiff has failed to state a claim for disparate treatment based on age under the ADEA.

For these reasons, to the extent not time-barred, *see supra*, the court **grants** Defendant's Motion with respect to Plaintiff's ADEA claims. Unlike her time-barred claims, *supra*, the court dismisses Plaintiff's ADEA claims without prejudice.

### 6. *Religious Discrimination Claim*

Ms. Webb alleges that Host failed to accommodate her purported religious practice of not working on Sundays. *See* Compl. ¶¶ 73-78. She further contends that she requested a transfer to another work location, but her request was denied because the only options presented to her required her to work on Sundays. *See id.* ¶ 21. Host contends that Ms. Webb has failed to allege a discrimination claim on the basis of religion. *See* Def.'s Resp. 31-32. In addition to its argument

**Memorandum Opinion and Order - Page 25**

that Plaintiff fails to provide any facts to support "her allegation that Host knew of her alleged religious practice of not working on Sundays[,]" Host contends that she "fails to establish that she suffered an adverse action necessary to sustain her accommodation claim." *Id.*

Title VII prohibits an employer from discriminating against an employee on the basis of her religion. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). When a plaintiff does not present direct evidence of discrimination, the court analyzes the claim using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, to state a prima facie case of discrimination, a plaintiff must set forth sufficient allegations to demonstrate that: (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. Davis v. Fort Bend Cnty., 765 F.3d 480, 485 (5th Cir. 2014)

As with her ADA claim, Ms. Webb does not address Host's arguments in her response brief and the court, therefore, concludes that she has effectively abandoned her religious discrimination claims. *See North Panola Sch. Dist.*, 461 F.3d at 588 n.1. Even if she had responded, the court agrees with Host that she has failed to state a claim for religious discrimination for the reasons set forth by Host. See Def.'s Mot. 31-32.

For these reasons, to the extent not time-barred, *see supra*, the court **grants** Defendant's Motion with respect to Plaintiff's religious discrimination claim. Unlike her time-barred claims, *supra*, the court dismisses Plaintiff's religious discrimination claim without prejudice.

## IV.    Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states, "[t]he court should freely give leave when justice so requires" is not without limitation. Fed. R. Civ. P.

**Memorandum Opinion and Order - Page 26**

15(a)(2). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

When a plaintiff has previously amended her pleadings, "[a]t some point, a court must decide that a plaintiff has had a fair opportunity to make [her] case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *see also Schiller*, 342 F.3d at 567 (citation omitted).

In this case, Plaintiff has not previously amended her pleadings. Further, Host suffers no legal prejudice because it will have the opportunity to file another dispositive motion to the amended pleading. Additionally, there is no repeated failure on Plaintiff's part to cure deficiencies previously identified by the court. Under these circumstances, with respect to those claims not dismissed with prejudice, *see infra*, justice requires that Plaintiff be allowed another opportunity to plead her case consistent with the law as set forth in the court's opinion.

## V.     Conclusion

For these reasons, the court **grants** Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Doc. 8). The following claims based on time-barred actions are **dismissed with prejudice**: Plaintiff's TCHRA claims; Plaintiff's Title VII, ADEA, and ADA claims insofar as they are based on any allegedly discriminatory or retaliatory actions that are not alleged to have

**Memorandum Opinion and Order - Page 27**

occurred on or after December 18, 2021 (that is, more than 300 days prior to October 14, 2022); and Plaintiff's Section 1981 claim insofar as it is based on any allegedly discriminatory or retaliatory actions that are not alleged to have occurred in or after August 2022.

The following claims that are not time-barred are **dismissed without prejudice** for failure to state a claim: Plaintiff's Title VII, ADEA, and ADA claims, but only insofar as these claims arise from discriminatory or retaliatory actions that are alleged to have occurred on or after December 18, 2021, and Plaintiff's Section 1981 claim, but only insofar as this claim arises from discriminatory or retaliatory actions that are alleged to have occurred in or after August 2022.

In keeping with Supreme Court and Fifth Circuit precedent, however, the court will allow Plaintiff leave to amend as to those claims that have been dismissed without prejudice. There is no indication that she cannot, or is unwilling to, cure the pleading defects the court has identified. Further, she has expressly moved for leave to amend if the court concludes that Host's arguments have merit. *See* Pl.'s Resp. 20-21. Accordingly, Plaintiff is permitted to file a first amended complaint no later than **April 21, 2026**. If she fails to cure the pleading deficiencies identified by the court by this date, her remaining claims against Host are subject to dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order.

Finally, it has been extremely difficult for the court to rule on the claims without any indication regarding when various allegedly discriminatory and retaliatory actions took place. As Host notes, "Plaintiff's Complaint is almost completely devoid of any facts as to when any events allegedly occurred. In fact, in her entire Complaint, Plaintiff provides only two relevant dates: (1) in August 2019, Plaintiff transferred to [Cowboy's Club] with a resulting pay adjustment; and (2) on August 9, 2022, Plaintiff had an interaction with a non-management coworker, which allegedly

caused her Lupus to flare up. (*See* Complaint at ¶¶ 10, 22).” Def.’s Mot. 15. In the event Plaintiff chooses to replead as to those claims dismissed without prejudice, she is advised to plead with more specificity or run the risk of dismissal with prejudice.

It is so ordered this **31st** day of **March, 2026**.

_____
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 29**